THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PAUL MECCIA, Defendant-Appellee.

First District (1st Division)   No. 1—92—3788

Opinion filed September 11, 1995.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter Fischer, Jon J. Walters, Donald T. Lyman, and Robin M. Mitchell, Assistant State's Attorneys, of counsel), for the People.

Patrick G. Reardon, of Chicago, for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, the People of the State of Illinois, appeals an order of the circuit court of Cook County granting defendant Paul Meccia's motion to dismiss the information filed against him.

The record on appeal indicates the following facts. On November 10, 1991, defendant was arrested and charged with aggravated assault, battery, and unlawful use of a weapon. Defendant was released on his own recognizance later that morning, but was to return to court for a preliminary hearing two days later. On November 12, 1991, defendant appeared at his preliminary hearing. The trial court asked defendant whether he was represented by counsel; defendant replied that he was not. The trial court told defendant that a public defender would be appointed, then advised defendant to be seated and that a public defender would speak with him momentarily. The assistant State's Attorney asked that defendant's case be transferred to another branch; defendant was charged with misdemeanors and was present only because a codefendant had been charged with a felony. The trial court replied that it did not yet have the case file to transfer. The trial court then passed the case at the assistant State's Attorney's request.

After the case was passed, defendant was taken into custody by a detective from Area Six Violent Crimes. Defendant was taken upstairs from the courtroom to the police station, where he was questioned by the detective and an assistant State's Attorney.

The case was recalled later that day. The State sought to nol-pros the misdemeanor charges. At this point, the trial court was informed by the assistant State's Attorney and the public defender that defendant had been taken into custody regarding the same incident for which defendant had already been arrested and released on bond. The assistant State's Attorney acknowledged that the misdemeanor charges should have been declared a *nolle prosequi* before defendant was taken into custody a second time. The trial court asked that defendant be returned to the courtroom to be informed that the State had declared a *nolle prosequi* as to the misdemeanor charges, noting that he had been in custody for several hours and that what had occurred was "really improper." The case was then passed again.

When the case was recalled later that day, the State again apologized for failing to nol-pros the case earlier. The State told the trial court that the case was still being examined by felony review. The trial court then told defendant that the misdemeanor case was being dropped, but that there might be more investigation of the matter. The trial court then asked whether defendant was going to

be released at this point. A person identified in the record as "Officer" stated that defendant was going to be taken back upstairs. The trial court stated that it would give defendant an opportunity to confer with counsel. The public defender then stated that defendant was invoking his right to remain silent and did not wish to speak to the police or the State's Attorney's office. The transcript of proceedings indicates that the proceedings ended at this point.

The State filed the felony charges at issue here later that afternoon. On December 4, 1991, following a preliminary hearing, the trial court found probable cause and continued the case for arraignment. On December 16, 1991, defendant was charged by information with attempted first degree murder and attempted disarming of a police officer.

On August 27, 1992, defendant filed a motion to dismiss the information on the ground that the actions of the police and the State violated his rights secured by the fourth, fifth and sixth amendments to the United States Constitution as well as the constitution and laws of Illinois. Following a hearing on the matter, the trial court granted defendant's motion, stating in relevant part as follows:

> "This is really very serious, [an] outlandish example of overreaching by the State and the Chicago Police Department and the State's Attorney's Office.
>
> What really galls me about this case is that in this system, in this case [the assistant State's Attorney], who is assigned to Branch 42, she ought to know better, keeps Judge David Linn in the dark as to what is going on at the time and permitting the Chicago Police Officers to continue to violate the rights of Mr. Meccia whether in fact the Chicago Police Officers [sic] had indicated to [the assistant State's Attorney] that that was his intent in the first instance to take him into custody, but he clearly did and not without her knowledge with Mr. Meccia being interrogated and illegally detained in that facility while the [c]ourt was then in session.
>
> Mr. Meccia, having in the first instance, gone to that court, pursuant to the provisions of his bail bond and having business in the court, I think that this is a case deserving of the imposition of serious sanctions and in this case, I will dismiss the [information] against the defendant Paul Meccia."

The State filed a motion to reconsider on September 18, 1992. The trial court denied the State's motion. The State filed a timely notice of appeal to this court.

■ On appeal, the State contends that the trial court erred in dismissing the information. Illinois case law indicates that prosecutorial misconduct may warrant dismissal of an indictment where

defendant's due process rights are violated such that his right to a fair trial is prejudiced or where the prosecutor's conduct in some way undermines the integrity of the judicial process as manifested in grand jury proceedings. (*People v. J.H.* (1990), 136 Ill. 2d 1, 12-13, 554 N.E.2d 961, 966 (and cases cited therein); see also *People v. Newberry* (1995), 166 Ill. 2d 310, 313-14 (upholding dismissal of indictment as sanction for due process violation).) That these two grounds for dismissal are distinct is exemplified by our supreme court's opinion in *J.H.*, which in the course of reversing a trial court's dismissal of an indictment stated as follows:

> "We fail to see how defendant's right to a fair trial could be prejudiced due to prosecutorial misconduct where suppression of the evidence, alleged to have been procured through such misconduct, is an available remedy. Moreover, presentation of the supposedly tainted testimony before the grand jury could not have undermined the integrity of the judicial process where other, untainted evidence connected defendant to the crime, where *** the grand jury could consider evidence so tainted in deciding whether to indict defendant, and where the evidence (defendant's testimony) was not so clearly inadmissible that the prosecutor perpetrated a fraud on the grand jury in presenting it for consideration, knowing that it would not be admissible at trial." (Emphasis omitted.) (*J.H.*, 136 Ill. 2d at 13, 554 N.E.2d at 966.)

The rules applicable to criminal proceedings instituted by indictment also apply to criminal proceedings instituted by information. *People v. Moore* (1990), 199 Ill. App. 3d 747, 763, 557 N.E.2d 537, 549.

■ In this case, the trial court found that the government violated defendant's fourth, fifth and sixth amendment rights. On appeal, the State does not contest that finding. Instead, the State argues that the information should not have been dismissed because defendant did not show that he was actually prejudiced or that there was a substantial threat of prejudice arising from the actions of the police and the assistant State's Attorneys in this case. (See, *e.g., United States v. Morrison* (1981), 449 U.S. 361, 365, 66 L. Ed. 2d 564, 568, 101 S. Ct. 665, 668; see *People v. Lawson* (1977), 67 Ill. 2d 449, 458-59, 367 N.E.2d 1244, 1248.) *Morrison, Lawson* and the cases following them address the claim that the government violated defendant's due process rights such that his or her right to a fair trial was prejudiced. In that context, a showing of prejudice to the defendant is required. Indeed, *Morrison* and *J.H.* suggest that in many cases, even where a defendant can show prejudice, the appropriate remedy (if any) is to suppress any improperly obtained evidence. *Morrison*, 449 U.S. at 365-66, 66 L. Ed. 2d at 568-69, 101 S. Ct. at 668-69; *J.H.*, 136 Ill. 2d at 11, 554 N.E.2d at 965.

In this case, however, the trial court based its ruling not only on a finding that defendant's constitutional rights were violated, but also upon what the trial court called a "very serious, outlandish example of overreaching by the State and the Chicago Police Department and the State's Attorney's Office." The transcripts also contain numerous references to the fact that much of this misconduct occurred in the courtroom. Thus, we turn to the question of whether the government undermined the judicial process to the extent that dismissal of the information was warranted.

■ In addition to the due process considerations discussed above, a trial court has the authority to dismiss a criminal case due to egregious misconduct under the due process clause of the United States Constitution. (*E.g.*, *Rochin v. California* (1952), 342 U.S. 165, 168, 96 L. Ed. 183, 188, 72 S. Ct. 205, 207.) Where multiple violations of a defendant's Federal and State constitutional rights are occasioned by the police and prosecutors, and originate "within the hallowed confines of the courtroom where the rule of law and fairness should be revered," the court's conscience is shocked and dismissal of the case is an appropriate remedy. (See *Morrow v. Superior Court* (1994), 30 Cal. App. 4th 1252, 1260-61, 36 Cal. Rptr. 2d 210, 216.) The *J.H.* court also held open the possibility that a case may be dismissed due to egregious misconduct. See *J.H.*, 136 Ill. 2d at 11, 554 N.E.2d at 965.

■ After reviewing the record on appeal in this case, we cannot conclude that the trial court's characterization of the government's actions in this case was in error. The State does not dispute that defendant was ushered from the courtroom by the police and taken into custody based on an incident for which defendant had already been arrested and was released on bond. This occurred despite the fact that the trial court had appointed the public defender to represent defendant and ordered defendant to remain in the courtroom to speak with counsel. The transcript shows that the assistant State's Attorney was present when the trial court took these actions. Nevertheless, defendant was taken to the police station and interrogated by the police and an assistant State's Attorney. The transcript indicates that defendant was so held for several hours. When the case was recalled, an assistant State's Attorney sought a continuance, rather than immediately informing the court of the situation and seeking a *nolle prosequi*. After the trial court discovered what the government had done and ordered that defendant be brought back before the court and that the assistant State's Attorney nol-pros the misdemeanor charges against defendant, the transcript shows that the police had every intention of immediately returning defen-

dant to the police station without affording defendant the opportunity to consult with counsel. Again, the intervention of the trial court was required.

In sum, the government acted with flagrant disregard of the defendant's constitutional rights. Moreover, the government acted and sought to act in direct contravention of the trial court's efforts in the courtroom to assure that the defendant's constitutional rights were secured. These aspects of the government's acts lead us to conclude that, despite the presentation of untainted evidence at the preliminary hearing, the government's acts undermined the integrity of the judicial process. The government's acts in this case constitute egregious misconduct. The government's acts in this case shock the conscience of the court. Given the unusual facts and circumstances presented by the record in this case, we conclude that the trial court did not err in dismissing the information against defendant.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and BRADEN, JJ., concur.